(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ABBOTT *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 09–479.   Argued October 4, 2010—Decided November 15, 2010*

Petitioners Abbott and Gould, defendants in unrelated prosecutions, were charged with drug and firearm offenses, including violation of 18 U. S. C. §924(c), which prohibits using, carrying, or possessing a deadly weapon in connection with "any crime of violence or drug trafficking crime," §924(c)(1).  The minimum prison term for a §924(c) offense is five years, §924(c)(1)(A)(i), in addition to "any other term of imprisonment imposed on the [offender]," §924(c)(1)(D)(ii).  Abbott was convicted on the §924(c) count, on two predicate drug-trafficking counts, and of being a felon in possession of a firearm.  He received a 15-year mandatory minimum sentence for his felon-in-possession conviction and an additional five years for his §924(c) violation.  Gould's predicate drug-trafficking crime carried a ten-year mandatory minimum sentence; he received an additional five years for his §924(c) violation.  On appeal, Abbott and Gould challenged their §924(c) sentences, resting their objections on the "except" clause prefacing §924(c)(1)(A).  That clause provides for imposition of a minimum five-year term as a consecutive sentence "[e]xcept to the extent that a greater minimum sentence is otherwise provided by [§924(c) itself] or by any other provision of law."  Abbott urged that the "except" clause was triggered by his 15-year felon-in-possession sentence; Gould said the same of the ten years commanded by his predicate trafficking crime.  The Third Circuit affirmed Abbott's sentence, concluding that the "except" clause "refers only to other minimum sentences that may be imposed" for §924(c) violations.  Gould fared no better before the Fifth Circuit.

──────────

*Together with No. 09–7073, *Gould* v. *United States,* on certiorari to the United States Court of Appeals for the Fifth Circuit.

*Held:* A defendant is subject to the highest mandatory minimum speci-
fied for his conduct in §924(c), unless another provision of law di-
rected to conduct proscribed by §924(c) imposes an even greater
mandatory minimum.  Pp. 5–18.

(a) Section 924(c) was enacted as part of the Gun Control Act of
1968, but the "except" clause was not added until 1998.  Under the
pre-1998 text, it is undisputed, separate counts of conviction did not
preempt §924(c) sentences, and Abbott and Gould would have been
correctly sentenced under §924(c).  The question here is whether
Congress' 1998 reformulation of §924(c) rendered their sentences ex-
cessive.  The 1998 alteration responded primarily to *Bailey* v. *United
States*, 516 U. S. 137, which held that §924(c)(1)'s ban on "use" of a
firearm did not reach "mere possession" of a weapon, *id.,* at 144.  In
addition to bringing possession within the statute's compass, Con-
gress increased the severity of §924(c) sentences by changing "once
mandatory sentences into mandatory minimum sentences," *United
States* v. *O'Brien*, 560 U. S. ___, ___, and by elevating the sentences
for brandishing and discharging a firearm and for repeat offenses.
Congress also restructured the provision, "divid[ing] what was once a
lengthy principal sentence into separate subparagraphs," *id.,* at ___,
and it added the "except" clause at issue.  Pp. 5–8.

(b) The leading portion of the "except" clause now prefacing
§924(c)(1)(A) refers to a "greater minimum sentence . . . otherwise
provided by [§924(c) itself]"; the second segment of the clause refers
to a greater minimum provided outside §924(c) "by any other provi-
sion of law."  To determine whether a greater minimum sentence is
"otherwise provided . . . by any other provision of law," the key ques-
tion is: otherwise provided *for what*?  Most courts have answered: for
the conduct §924(c) proscribes, *i.e.*, possessing a firearm in connection
with a predicate crime.

Abbott and Gould disagree.  Gould would apply the "except" clause
whenever any count of conviction at sentencing requires a greater
minimum sentence.  Abbott argues that the minimum sentence "oth-
erwise provided" must be one imposed for the criminal transaction
that triggered §924(c) or, in the alternative, for a firearm offense in-
volving the same firearm that triggered §924(c).  These three inter-
pretations share a common, but implausible, premise: that Congress
in 1998 adopted  a less aggressive mode of applying §924(c), one that
significantly reduced the severity of the provision's impact on defen-
dants.  The pre-1998 version of §924(c) prescribed a discrete sentence
to be imposed on top of the sentence received for the predicate crime
or any separate firearm conviction.  It is unlikely that Congress
meant a prefatory clause, added in a bill dubbed "An Act [t]o throttle
criminal use of guns," to effect a departure so great from §924(c)'s

original insistence that sentencing judges impose *additional* punishment for §924(c) violations. Abbott's and Gould's readings would undercut that same bill's primary objective: to expand §924(c)'s coverage to reach firearm possession. Their readings would also result in sentencing anomalies Congress surely did not intend. Section 924(c), as they construe it, would often impose no penalty at all for the conduct that provision makes independently criminal. Stranger still, the worst offenders would often secure shorter sentences than less grave offenders, because the highest sentences on other counts of conviction would be most likely to preempt §924(c) sentences. Abbott and Gould respond that sentencing judges may take account of any anomalies and order appropriate adjustments. While a judge exercising discretion under 18 U. S. C. §3553(a) would not be required to sentence a more culpable defendant to a lesser term, this Court doubts that Congress had such a cure in mind in 1998, seven years before *United States* v. *Booker*, 543 U. S. 220, held that district courts have discretion to depart from the Sentencing Guidelines based on §3553(a). Abbott and Gould alternatively contend that Congress could have anticipated that the then-mandatory Guidelines would resolve disparities by prescribing a firearm enhancement to the predicate sentence. But Congress expressly rejected an analogous scheme in 1984, when it amended §924(c) to impose a penalty even when the predicate crime itself prescribed a firearm enhancement. Between 1984 and 1998, Congress expanded the reach or increased the severity of §924(c) four times, never suggesting that a Guidelines firearm enhancement might suffice to accomplish §924(c)'s objective. Nor is there any indication that Congress was contemplating the Guidelines' relationship to §924(c) when it added the "except" clause. Pp. 8–14.

(c) The Government's reading—that the "except" clause is triggered only when another provision commands a longer term for conduct violating §924(c)—makes far more sense. It gives effect to statutory language commanding that all §924(c) offenders shall receive additional punishment for their violation of that provision, a command reiterated three times: First, the statute states that the §924(c)(1) punishment "shall" be imposed "in addition to" the penalty for the predicate offense, §924(c)(1)(A); second, §924(c) demands a discrete punishment even if the predicate crime itself "provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device," *ibid.*; third, §924(c)(1)(D)(ii) rules out the possibility that a §924(c) sentence might "run concurrently with any other term of imprisonment." Interpreting the "except" clause to train on conduct offending §924(c) also makes sense as a matter of syntax. The clause is a proviso, most naturally read to refer to the conduct

§924(c) proscribes.  See *United States* v. *Morrow*, 266 U. S. 531, 534–
535.  There is strong contextual support for the view that the "except"
clause was intended simply to clarify §924(c).  At the same time Con-
gress added the clause, it made the rest of §924(c) more complex, di-
viding its existing sentencing prescriptions into four paragraphs, and
adding new penalties for brandishing and discharging a firearm.
Congress thought the restructuring might confuse sentencing judges:
It added the "except" clause's initial part, which covers greater mini-
mums provided "by this subsection," to instruct judges not to stack
ten years for discharging a gun on top of seven for brandishing the
same weapon.  In referencing greater minimums provided by "any
other provision of law," the second portion of the clause simply fur-
nishes the same no-stacking instruction for cases in which §924(c)
and a different statute both punish conduct offending §924(c).  Con-
gress likely anticipated such cases when framing the "except" clause,
for the bill that reformulated §924(c)'s text also amended 18 U. S. C.
§3559(c) to command a life sentence for certain repeat felons con-
victed of "firearms possession (as described in §924(c))."  This inter-
pretation does not render the "except" clause's second part effectively
meaningless.  Though §3559(c) is the only existing statute, outside of
§924(c) itself, that the Government places within the "except" clause,
the "any other provision of law" portion installs a safety valve for ad-
ditional sentences that Congress may codify outside §924(c) in the fu-
ture.  Neither *United States* v. *Gonzales,* 520 U. S. 1, nor *Republic of
Iraq* v. *Beaty*, 556 U. S. ___, warrants a different conclusion.  Pp. 14–
18.

No. 09–479, 574 F. 3d 203; No. 09–7073, 329 Fed. Appx. 569, affirmed.

GINSBURG, J., delivered the opinion of the Court, in which all other
Members joined, except KAGAN, J., who took no part in the considera-
tion or decision of the cases.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

#### Nos. 09–479 and 09–7073

### KEVIN ABBOTT, PETITIONER
09–479          *v.*
### UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

### CARLOS RASHAD GOULD, PETITIONER
09–7073          *v.*
### UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[November 15, 2010]

JUSTICE GINSBURG delivered the opinion of the Court.

As one of several measures to punish gun possession by persons engaged in crime, Congress made it a discrete offense to use, carry, or possess a deadly weapon in connection with "any crime of violence or drug trafficking crime." 18 U. S. C. §924(c)(1). The minimum prison term for the offense described in §924(c) is five years, §924(c)(1)(A)(i), in addition to "any other term of imprisonment imposed on the [offender]," §924(c)(1)(D)(ii). The two consolidated cases before us call for interpretation of §924(c) as that provision was reformulated in 1998.

Kevin Abbott and Carlos Rashad Gould, petitioners here, defendants below, were charged with multiple drug

and firearm offenses; charges on which they were con-
victed included violation of §924(c).  Each objected to the
imposition of any additional prison time for his §924(c)
conviction.  Their objections rested on the "except" clause
now prefacing §924(c)(1)(A).  Under that clause, a mini-
mum term of five years shall be imposed as a consecutive
sentence "[e]xcept to the extent that a greater minimum
sentence is otherwise provided by [§924(c) itself] or by any
other provision of law."

Abbott and Gould read §924(c)'s "except" clause to se-
cure them against prison time for their §924(c) convic-
tions.  They claim exemption from punishment under
§924(c) because they were sentenced to greater mandatory
minimum prison terms for convictions on other counts
charging different offenses.  The "except" clause, they
urge, ensures that §924(c) offenders will serve at least five
years in prison.  If conviction on a different count yields a
mandatory sentence exceeding five years, they maintain,
the statutory requirement is satisfied and the penalty
specified for the §924(c) violation becomes inoperative.

The courts below, agreeing with the Government's
construction of the statute, read §924(c)(1) as independ-
ently requiring a sentence of at least five years, tacked
onto any other sentence the defendant receives.  The
"except" clause refers to "a greater minimum sentence . . .
otherwise provided."  "[O]therwise provided" *for what*, the
courts below asked; their answer, for conduct offending
§924(c), *i.e.*, possessing a firearm in connection with a
crime of violence or drug-trafficking crime.

A defendant is not spared from a separate, consecutive
sentence for a §924(c) conviction, the lower courts deter-
mined, whenever he faces a higher mandatory minimum
for a different count of conviction.  Instead, according to
the courts below and the Government here, the "except"
clause applies only when another provision—whether
contained within or placed outside §924(c)—commands a

longer term for conduct violating §924(c). For example, the mandatory minimum sentence for a §924(c) offense is five years, but if the firearm is brandished, the minimum rises to seven years, and if the firearm is discharged, to ten years. §924(c)(1)(A)(i), (ii), (iii). A defendant who possessed, brandished, and discharged a firearm in violation of §924(c) would thus face a mandatory minimum term of ten years.

We hold, in accord with the courts below, and in line with the majority of the Courts of Appeals, that a defendant is subject to a mandatory, consecutive sentence for a §924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. Under the "except" clause as we comprehend it, a §924(c) offender is not subject to stacked sentences for violating §924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22. He is, however, subject to the highest mandatory minimum specified for his conduct in §924(c), unless another provision of law directed to conduct proscribed by §924(c) imposes an even greater mandatory minimum.

I

Abbott and Gould, defendants in unrelated prosecutions, were each charged with violating §924(c)(1)(A)(i) by possessing a firearm in furtherance of a drug-trafficking crime. Abbott's case was tried to a jury in the Eastern District of Pennsylvania, which convicted him on the §924(c) count and three others: two predicate trafficking counts, 21 U. S. C. §§841, 846, and being a felon in possession of a firearm, 18 U. S. C. §922(g). Given Abbott's extensive criminal history, his felon-in-possession conviction triggered a 15-year mandatory minimum under the Armed Career Criminal Act (ACCA), 18 U. S. C. §924(e). The District Court sentenced Abbott to the 15 years man-

dated by ACCA, and to an additional five years for the
§924(c) violation, yielding a total prison term of 20 years.[1]

Gould's indictment listed seven separate drug and fire-
arm charges. In return for Gould's agreement to plead
guilty, the Government dropped all but two: one §924(c)
offense and one predicate drug-trafficking crime. The
latter, for conspiracy to possess with intent to distribute
cocaine base, carried a ten-year mandatory minimum
under §841(b)(1)(A). Firearm involvement was not an
element of that offense. The United States District Court
for the Northern District of Texas imposed a sentence of
11 years and 5 months for the trafficking offense and an
additional five years for the §924(c) violation, for a total of
16 years and 5 months.

On appeal, Abbott and Gould challenged the five-year
consecutive sentence each received under §924(c). Abbott
urged that ACCA's 15-year mandatory minimum triggered
§924(c)'s "except" clause, because ACCA qualified as
"[an]other provision of law" that "provided" a "greater
minimum sentence." Gould said the same of the ten years
commanded by his predicate trafficking crime.

The United States Court of Appeals for the Third Cir-
cuit affirmed Abbott's sentence, concluding that the "ex-
cept" clause "refers only to other minimum sentences that
may be imposed for violations of §924(c)." *United States* v.
*Abbott*, 574 F. 3d 203, 208 (2009). Gould fared no better
before the Fifth Circuit. *United States* v. *Gould*, 329 Fed.
Appx. 569, 570 (2009) *(per curiam)*. That court's precedent
already confined the exception to conduct offending
§924(c). *United States* v. *London*, 568 F. 3d 553, 564
(2009). To resolve the division among the Circuits on the

---

[1] Abbott received ten years on each drug-trafficking count. Those
sentences, imposed concurrently, did not alter his total term of impris-
onment and do not figure in this case.

proper construction of §924(c)'s "except" clause,[2] we granted certiorari in both cases and consolidated them for argument. 559 U. S. \_\_\_ (2010).

## II
## A

Congress enacted 18 U. S. C. §924(c) as part of the Gun Control Act of 1968, 82 Stat. 1213. The "except" clause, which did not appear in §924(c) as originally composed, was introduced by statutory amendment in 1998. See An Act [t]o throttle criminal use of guns, 112 Stat. 3469. We begin by setting out §924(c), first as it read before 1998, then as amended that year.

The earlier version read in relevant part:

> "Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . , uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years,

---

[2] Compare *United States* v. *Williams*, 558 F. 3d 166, 171 (CA2 2009) (clause covers "minimum sentences for . . . offenses arising from the same criminal transaction or operative set of facts"); and *United States* v. *Almany*, 598 F. 3d 238, 241 (CA6 2010) (clause applies whenever a defendant "is subject" to a greater mandatory minimum), with *United States* v. *Parker*, 549 F. 3d 5, 11–12 (CA1 2008) (clause does not cover sentences for predicate drug offenses but might cover sentences for ACCA firearm offenses); *United States* v. *Villa*, 589 F. 3d 1334, 1343 (CA10 2009) (clause covers only sentences for conduct offending §924(c)); *United States* v. *Segarra*, 582 F. 3d 1269, 1272–1273 (CA11 2009) (same); 574 F. 3d, at 208 (case below) (same); *United States* v. *Easter*, 553 F. 3d 519, 526 (CA7 2009) *(per curiam)* (same); *United States* v. *Studifin*, 240 F. 3d 415, 423 (CA4 2001) (same); *United States* v. *Alaniz*, 235 F. 3d 386 (CA8 2000) (same); and 329 Fed. Appx., at 570 (case below) (same).

and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release. Notwithstanding any other provision of law, . . . the term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried." §924(c)(1) (1994 ed.).

If this pre-1998 text governed, all agree, separate counts of conviction would have no preemptive force, and Abbott and Gould would have been correctly sentenced under §924(c). The question we confront is whether Congress' 1998 reformulation of §924(c) rendered the sentences imposed on Abbott and Gould excessive.

The 1998 alteration responded primarily to our decision in *Bailey* v. *United States*, 516 U. S. 137 (1995). In proscribing "use" of a firearm, *Bailey* held, §924(c)(1) did not reach "mere possession" of the weapon. *Id.,* at 144. Congress legislated a different result; in the 1998 revision, "colloquially known as the Bailey Fix Act," the Legislature brought possession within the statute's compass. *United States* v. *O'Brien*, 560 U. S. ___, ___ (2010) (slip op., at 14) (internal quotation marks omitted).

In addition to the change prompted by *Bailey*, Congress increased the severity of §924(c) sentences in two other

respects: The 1998 revision "changed what were once mandatory sentences into mandatory minimum sentences," *O'Brien,* 560 U. S., at ___ (slip op., at 13); and it elevated the sentences for brandishing and discharging a firearm and for repeat offenses. Congress also restructured the provision, "divid[ing] what was once a lengthy principal sentence into separate subparagraphs." *Id.,* at ___ (slip op., at 7). And it added the prefatory "except" clause at issue in the cases now before us. As amended, §924(c)(1)(A) prescribes:

> "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> "(i) be sentenced to a term of imprisonment of not less than 5 years;
>
> "(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> "(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years."

The 1998 reformulation, furthermore, removed to separate paragraphs the provisions commanding higher penalties for especially destructive weapons and "second or subsequent" offenses. See §924(c)(1)(B), (C).[3] While leav-

―――――――――

[3] These provisions read:

ing the penalties for highly destructive weapons un-
changed, the revision raised the base punishment for
"second or subsequent" offenses from 20 years to 25. *Ibid.*
The reformulation also transferred the bar on concurrent
sentences to §924(c)(1)(D)(ii):

> "[N]o term of imprisonment imposed on a person
> under this subsection shall run concurrently with any
> other term of imprisonment imposed on the person,
> including any term of imprisonment imposed for the
> crime of violence or drug trafficking crime during
> which the firearm was used, carried, or possessed."

## B

The leading portion of the "except" clause, which now
prefaces §924(c)(1)(A), refers to a "greater minimum sen-
tence . . . otherwise provided by this subsection," *i.e.*, by
§924(c) itself; the second segment of the clause refers to a
greater minimum provided outside §924(c) "by any other
provision of law." Beyond debate, the latter instruction
does not relieve a §924(c) offender of additional punish-
ment "simply because a higher mandatory minimum
sentence exists in the United States Code." Brief for

––––––––––

"(B) If the firearm possessed by a person convicted of a violation of
this subsection—

"(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic
assault weapon, the person shall be sentenced to a term of imprison-
ment of not less than 10 years; or

"(ii) is a machinegun or a destructive device, or is equipped with a
firearm silencer or firearm muffler, the person shall be sentenced to a
term of imprisonment of not less than 30 years.

"(C) In the case of a second or subsequent conviction under this
subsection, the person shall—

"(i) be sentenced to a term of imprisonment of not less than 25 years;
and

"(ii) if the firearm involved is a machinegun or a destructive device,
or is equipped with a firearm silencer or firearm muffler, be sentenced
to imprisonment for life."

Petitioner in No. 09–479, p. 19 (hereinafter Abbott Brief). Were it otherwise, the statute's ascending series of minimums, set out in §924(c)(1)(A)–(C), would have no work to do; the only possible §924(c) sentence would be the Code's highest—life. The "except" clause, it is therefore undisputed, "has to have *some* understood referent to be intelligible." *United States* v. *Parker*, 549 F. 3d 5, 11 (CA1 2008). What should that referent be? As we comprehend the clause, to determine whether a greater minimum sentence is "otherwise provided . . . by any other provision of law," the key question one must ask is: otherwise provided *for what*? As earlier noted, see *supra*, at 3, most courts, in line with the courts below and the Government, have answered: for the conduct §924(c) proscribes, *i.e.*, possessing a firearm in connection with a predicate crime.

Abbott and Gould disagree and offer diverse readings. Gould principally would apply the "except" clause to preclude a §924(c) sentence whenever "any of a defendant's counts of convictio[n] at sentencing" require a greater minimum sentence. Brief for Petitioner in No. 09–7073, p. 14 (hereinafter Gould Brief).

In lieu of Gould's position that any greater minimum sentence on a different count of conviction will do, Abbott advances a somewhat narrower "transactional approach." Any sentence imposed on the defendant fits the bill, he urges, so long as the sentence was imposed "because of the criminal transaction that triggered §924(c) in the first place." Abbott Brief 10. Accord *United States* v. *Williams*, 558 F. 3d 166, 171 (CA2 2009).

Abbott also tenders an alternative construction: The minimum sentence "otherwise provided" must be for a firearm offense—for example, Abbott's felon-in-possession charge—involving the same firearm that triggered §924(c).[4] Conceding that this reading is "not commanded

———————

[4] Because Gould's only firearm-related offense is his §924(c) offense,

by the [statute's] plain language," Tr. of Oral Arg. 24, Abbott asserts that it advances §924(c)'s goal—to discourage bearing arms in furtherance of crime—while avoiding the imposition of "two consecutive mandatory minimum sentences for the single use of a single firearm," Abbott Brief 47 (emphasis omitted).

The three interpretations just described share a common premise. In adding the "except" clause in 1998, all three posit, Congress adopted a less aggressive mode of applying §924(c), one that significantly reduced the severity of the provision's impact on defendants. Like the courts below, we regard this premise as implausible. As earlier observed, see *supra*, at 5–6, the pre-1998 version of §924(c) prescribed a discrete sentence—punishment to be imposed regardless of the sentence received for the predicate crime or any separate firearm conviction. Abbott and Gould think the "except" clause installed, instead, a modest scheme designed simply to ensure that all §924(c) offenders "serve at least 5 years in prison." Gould Brief 5; see Abbott Brief 10. We doubt that Congress meant a prefatory clause, added in a bill dubbed "An Act [t]o throttle criminal use of guns," to effect a departure so great from §924(c)'s longstanding thrust, *i.e.*, its insistence that sentencing judges impose *additional* punishment for §924(c) violations.

Were we to accept any of the readings proposed by Abbott or Gould, it bears emphasis, we would undercut that same bill's primary objective: to expand §924(c)'s coverage to reach firearm possession. In 1999, more than half of those who violated §924(c) in connection with a drug-trafficking offense received a mandatory minimum of ten years or more for that trafficking offense. Letter from Glenn R. Schmitt, United States Sentencing Commission, to Supreme Court Library (Nov. 10, 2010) (available in

─────────

Gould's sentence would stand under Abbott's alternative construction.

Clerk of Court's case file). Congress, however, imposed only a five-year minimum for firearm possession "in furtherance of" a drug offense. As construed by Abbott and Gould, the amendment to include firearm possession as a §924(c) offense would spare the most serious drug offenders from any discrete punishment for the very firearm activity the amendment targeted. "We are disinclined to say that what Congress imposed with one hand . . . it withdrew with the other . . . ." *Logan* v. *United States*, 552 U. S. 23, 35 (2007).

Abbott's and Gould's proposed readings, moreover, would result in sentencing anomalies Congress surely did not intend. We note first that §924(c), as they construe it, would often impose no penalty at all for the conduct that provision makes independently criminal. Tr. of Oral Arg. 52. For example, an individual who sold enough drugs to receive a ten-year minimum sentence under §841(b)(1)(A) could, so far as §924(c) is concerned, possess or even brandish a gun without incurring any additional punishment.

Stranger still, under the Abbott and Gould readings, the worst offenders would often secure the shortest sentences. Consider two defendants convicted of trafficking in cocaine. The first possesses 500 grams and is subject to a mandatory minimum of five years, §841(b)(1)(B); the second possesses five kilograms and is subject to a mandatory minimum of ten years, §841(b)(1)(A). Both brandish firearms, calling for a sentence of seven years under §924(c)(1)(A)(ii). The first defendant, under all readings, will spend at least 12 years in prison. The second defendant's ten-year drug minimum, according to Abbott and Gould, triggers the "except" clause and wipes out that defendant's §924(c) penalty; though the more culpable of the two, the second defendant's minimum term would be just ten years. Brief for United States 40. Like the Third Circuit below, "[w]e are confident that Congress did not intend such a bizarre result." 574 F. 3d, at 209.

Abbott's alternative construction, which homes in on other firearm offenses, gives rise to similar oddities. On this reading, Abbott's 15-year ACCA sentence for being a felon-in-possession would preempt his five-year §924(c) sentence, and his minimum term would be 15 years, rather than 20.[5] But if ACCA were not at issue, Abbott's minimum term would be the same 15 years: his five-year §924(c) sentence on top of his ten-year drug sentence. Qualification as a career criminal would carry no consequence.

Nor does Abbott's second construction necessarily promote more equitable outcomes. Suppose, for example, that a career criminal sold drugs together with a first-time offender, and both brandished firearms in the process. The first-time offender, lacking a felon-in-possession conviction, would serve a seven-year §924(c) sentence on top of a ten-year drug sentence, for a total of 17 years. But the career criminal's ACCA sentence would preempt the §924(c) sentence; he would serve only 15 years.

Abbott and Gould respond that sentencing judges may take account of such anomalies and order appropriate adjustments. We observe first that no correction or avoidance appears possible for the anomaly that, while §924(c) "defines a standalone crime," a §924(c) sentence would be wiped out by a wholly separate and independent conviction. *United States* v. *Easter*, 553 F. 3d 519, 526 (CA7 2009) *(per curiam)* ("A determination of guilt that yields no sentence is not a judgment of conviction at all."). We do, however, agree that a judge exercising discretion under 18 U. S. C. §3553(a) "would [not] be *required* to sentence" a more culpable defendant to a lesser term; the judge could increase that defendant's sentence for a predicate crime to make up for §924(c)'s failure to effect any enlargement of the time served. *United States* v. *Whitley*,

_____

[5] ACCA sentences may run concurrently with drug sentences.

529 F. 3d 150, 155 (CA2 2008). But we doubt Congress had such a cure in mind in 1998, seven years before we held, in *United States* v. *Booker*, 543 U. S. 220 (2005), that district courts have discretion to depart from the Sentencing Guidelines on the basis of §3553(a).

Abbott and Gould alternatively contend that Congress could have anticipated that the then-mandatory Guidelines would resolve disparities. See Abbott Brief 32–35; Gould Brief 30–32. On this view, the "except" clause ensures that a §924(c) offender incurs a minimum sentence of considerable length; the Guidelines would then control, elevating that sentence based on firearm possession or use. See United States Sentencing Commission, Guidelines Manual §§2D1.1(b)(1), 2K2.1(b)(5) (Nov. 1998) (increasing offense level for defendants who use or possess firearms in course of violent crime or drug trafficking); §§2D1.1(b)(1), 2K2.1(b)(6) (Nov. 2009) (same).

We do not gainsay that Abbott and Gould project a rational, less harsh, mode of sentencing. But we do not think it was the mode Congress ordered. Congress expressly rejected an analogous scheme in 1984, when it amended §924(c) in the same law that created the Sentencing Commission and the Guidelines. Pub. L. 98–473, 98 Stat. 1987, 2138. Four years earlier, in *Busic* v. *United States*, 446 U. S. 398, 404 (1980), we had read §924(c) to impose no penalty when the predicate crime itself prescribed a firearm enhancement; similarly, Abbott and Gould now read §924(c) to impose no penalty when the Guidelines prescribe a firearm enhancement to the predicate sentence. The 1984 legislation "repudiated" *Busic*, clarifying that §924(c) applied even when the predicate crime already "provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device." *United States* v. *Gonzales*, 520 U. S. 1, 10 (1997) (internal quotation marks omitted).

Between 1984 and 1998, Congress expanded the reach

or increased the severity of §924(c) on four occasions, never suggesting that a Guidelines firearm enhancement might suffice to accomplish §924(c)'s objective.[6]  Nor is there the slightest indication that Congress was contemplating the Guidelines' relationship to §924(c) when it added the "except" clause in the 1998 amendments.[7]

The "except" clause, we note, would have been a most haphazard way to achieve a Guidelines-driven rollback of §924(c).  If Congress wanted to ensure that §924(c) offenders "receive at least five years in prison," and to rely on the Guidelines for the rest, Abbott Brief 10, there was an obvious solution: Congress could have excised all prescriptions ordering that §924(c) sentences shall run consecutively to other sentences.  Without such a requirement, *all* defendants would benefit from a minimum-plus-Guidelines regime—not just the most culpable offenders.  Congress did not adopt that obvious solution, we think, because it did not want the Guidelines to supplant §924(c).

## C

The Government's reading of the "except" clause, we are convinced, makes far more sense than the interpretations urged by Abbott and Gould.  In imposing a sentence for a

_____

[6] Firearms Owners' Protection Act, 1986, Pub. L. 99–308, §104(a), 100 Stat. 456–457 (increasing sentences for certain firearms and adding drug trafficking as a predicate felony); Anti-Drug Abuse Act of 1988, Pub. L. 100–690, §6460, 102 Stat. 4373–4374 (increasing sentences); Crime Control Act of 1990, Pub. L. 101–647, §1101, 104 Stat. 4829 (same); Public Safety and Recreational Firearms Use Protection Act, 1994, Pub. L. 103–322, §110102(c), 108 Stat. 1998 (same).

[7] For those who take legislative history into account, it is as silent as is the statute's text.  The sole reference to the "except" clause appears in the statement of one witness at a Senate hearing.  See Hearing on S. 191 before the Senate Committee on the Judiciary, 105th Cong., 1st Sess., 38 (1997) (statement of Thomas G. Hungar) ("[B]y adding an introductory clause authorizing imposition of stiffer minimum sentences if required under other provisions of law, S. 191 eliminates any potential inconsistency with other statutes.").

§924(c) violation "[e]xcept to the extent that a greater minimum sentence is otherwise provided . . . by any other provision of law," Congress meant:

> "[I]f another provision of the United States Code mandates a punishment for using, carrying, or possessing a firearm in connection with a drug trafficking crime or crime of violence, and that minimum sentence is longer than the punishment applicable under §924(c), then the longer sentence applies." Brief for United States 17.

This reading gives effect to the statutory language commanding that all §924(c) offenders shall receive additional punishment for their violation of that provision, a command reiterated three times. First, the statute states that the punishment specified in §924(c)(1) "shall" be imposed "in addition to" the penalty for the predicate offense. §924(c)(1)(A). Second, after *Busic*, §924(c) demands a discrete punishment even if the predicate crime itself "provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device." *Ibid.* Third, §924(c)(1)(D)(ii) rules out the possibility that a §924(c) sentence might "run concurrently with any other term of imprisonment." We doubt that Congress, having retained this thrice-repeated instruction, would simultaneously provide an exception severely limiting application of the instruction. Cf. *Greenlaw* v. *United States*, 554 U. S. 237, 251 (2008) ("We resist attributing to Congress an intention to render a statute so internally inconsistent.").

Interpreting the "except" clause to train on conduct offending §924(c) also makes sense as a matter of syntax. The "except" clause is not a standalone enactment, or even a standalone sentence. Rather, it precedes and qualifies §924(c)(1)(A)'s principal clause, which punishes the possession of a firearm in connection with specified predicate

crimes. The "grammatical and logical scope" of a proviso, we have held, "is confined to the subject-matter of the principal clause" to which it is attached. *United States* v. *Morrow*, 266 U. S. 531, 534–535 (1925). As a proviso attached to §924(c), the "except" clause is most naturally read to refer to the conduct §924(c) proscribes. Accord *United States* v. *Villa,* 589 F. 3d 1334, 1343 (CA10 2009).

There is strong contextual support for our view that Congress intended the "except" clause to serve simply as a clarification of §924(c), not as a major restraint on the statute's operation. At the same time Congress added the "except" clause, it made the rest of §924(c) more complex. The 1998 revision divided the statute's existing sentencing prescriptions into four paragraphs in lieu of one, and added new penalties for brandishing and discharging a firearm. §924(c)(1)(A)–(D). We know that Congress thought the restructuring might confuse sentencing judges: Warding off confusion, all agree, was the Legislature's sole objective in adding the initial part of the "except" clause, which covers greater minimums provided "by this subsection." That portion of the clause instructs judges to pick the single highest sentence stipulated for a §924(c) violation within §924(c) itself, and not to stack ten years for discharging a gun on top of seven for brandishing the same weapon, whenever a defendant does both.

In referencing greater minimums provided by "any other provision of law," we think, the second portion of the "except" clause simply furnishes the same no-stacking instruction for cases in which §924(c) and a different statute both punish conduct offending §924(c). Congress likely anticipated such cases when the "except" clause was framed in 1998, for the bill that reformulated the text of §924(c) did just one thing more: It amended 18 U. S. C. §3559(c) to command a life sentence when certain repeat felons are convicted of "firearms possession (as described in §924(c))." Pub. L. 105–386, §1(b), 112 Stat. 3470.

Our interpretation, Abbott and Gould protest, renders the second part of the "except" clause effectively meaningless. Section 3559(c) is the only existing statute, outside of §924(c) itself, the Government places within the "except" clause. Tr. of Oral Arg. 32–35, 42–44.[8] But §3559(c) already imposes a life sentence. A defendant would find little comfort in knowing that no §924(c) sentence, say five years or seven, will be tacked on to his §3559(c) life term.

As Courts of Appeals have observed, however, the "any other provision of law" portion of the "except" clause installs a "safety valve." *United States* v. *Studifin*, 240 F. 3d 415, 423 (CA4 2001). It "allow[s] for additional §924(c) sentences," akin to the sentence prescribed in §3559(c), that Congress may codify outside §924(c) "in the future." See *Abbott*, 574 F. 3d, at 208. We do not regard this allowance as "implausible." See Abbott Brief 22; Gould Brief 21. As the Government points out, "there is nothing unusual about Congress prescribing mandatory minimum penalties for substantive offenses codified in other provisions." Brief for United States 22. See, *e.g.*, §3559(c) (prescribing penalties for violations of, *inter alia*, 49 U. S. C. §46502 and 18 U. S. C. §§1111, 2111, 2113, and 2118); §3559(d) (prescribing penalties for violations of, *inter alia*, 18 U. S. C. §§2422, 2423, and 2251); 18 U. S. C. §924(e) (prescribing penalty for violation of §922(g)). See also 18 U. S. C. §924(j)(1) (prescribing a nonmandatory penalty of death for individuals who commit murder with a firearm in the course of a §924(c) offense).

Our decisions in *Gonzales* and *Republic of Iraq* v. *Beaty,* 556 U. S. ___ (2009), do not warrant a different conclusion. We observed in *Gonzales* that "the word 'any' [ordinarily]

—————

[8] We agree with the Government that a qualifying statute need not "explicit[ly] reference" §924(c), Tr. of Oral Arg. 27; a statute will fit the bill if it provides a greater mandatory minimum for an offense that embodies all the elements of a §924(c) offense.

has an expansive meaning." 520 U. S., at 5 (holding that "any other term of imprisonment" includes terms imposed by state courts). See also *Beaty*, 556 U. S., at ___ (slip op., at 7) (the word "any" in "any other provision of law" was "no warrant to limit the class of provisions of law"). But our decision on the petitions of Abbott and Gould does not turn on artificial confinement of the phrase "any other provision of law." We rely, instead, on the different direction Congress prescribed for the "except" clause: It applies only when "a greater minimum sentence is otherwise provided." "In the contest between reading" that phrase "to refer to penalties for the [§924(c)] offense in question or to penalties for any [other] offense [a defendant commits], we believe the former is the most natural." *Easter*, 553 F. 3d, at 526.[9]

\*　　\*　　\*

For the reasons stated, the judgments of the Court of Appeals for the Third Circuit and the Court of Appeals for the Fifth Circuit are

*Affirmed.*

JUSTICE KAGAN took no part in the consideration or decision of these cases.

───────────

[9] Abbott and Gould invoke the rule of lenity as a final reason to construe the "except" clause to bar their punishments under §924(c); if their proposed limitations are textually possible, they maintain, we may not choose the Government's. "[T]he touchstone of the rule of lenity is statutory ambiguity." *Bifulco* v. *United States*, 447 U. S. 381, 387 (1980) (internal quotation marks omitted). "[A]fter consulting traditional canons of statutory construction," *United States* v. *Shabani*, 513 U. S. 10, 17 (1994), we are persuaded that none remains here: The "except" clause covers only conduct offending §924(c). Although the clause might have been more meticulously drafted, the "grammatical possibility" of a defendant's interpretation does not command a resort to the rule of lenity if the interpretation proffered by the defendant reflects "an implausible reading of the congressional purpose." *Caron* v. *United States*, 524 U. S. 308, 316 (1998).