RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee/Cross-Appellant,*

*v.*

FREDRICK D. TAYLOR,
　　　　*Defendant-Appellant/Cross-Appellee.*

Nos. 10-3762/3875

————————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00167-001—Edmund A. Sargus, Jr., District Judge.

Argued: November 18, 2011

Decided and Filed: January 13, 2012

Before: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Nicole Lynn Rutter-Hirth, RION, RION & RION LPA Inc., Dayton, Ohio, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Jon Paul Rion, RION, RION & RION LPA Inc., Dayton, Ohio, for Appellant. Robyn Jones Hahnert, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

————————————

## OPINION

————————————

KETHLEDGE, Circuit Judge. Fredrick Taylor entered a conditional guilty plea for conspiracy to distribute 1000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846, and possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i). He now argues that the district court should have suppressed drugs and firearms that the police

found in his home after executing two arrest warrants there.  Specifically, he disputes that the police discovered the evidence as part of a lawful protective sweep.  We disagree and affirm.

I.

Between June and September 2008, the police surveilled 1206 Rendezvous Lane as part of an investigation into a drug-trafficking operation.  They watched people travel between the Rendezvous house and other houses under investigation.  In the curbside trash they found marijuana paraphernalia, an empty ammunition box, and mail addressed to two people, including Taylor.  On October 2, 2008 the police executed a search warrant at Rendezvous and found "numerous firearms."

Several months later, the government indicted Taylor and 28 others in connection with the drug-trafficking operation.  Some of the defendants were also indicted on firearms charges.  On March 4, 2009, the police obtained arrest warrants for all 28 defendants.  The police drove to the Rendezvous house because they "had an idea" that Taylor "could have been" there.  An officer knocked on the door.  A woman who was herself an arrest target answered it.  Recognizing her, the officer immediately stepped in and arrested her.  He noticed a man in his early twenties sitting in the living room. The officer asked if Taylor was in the house.  Another woman came down the stairs from the second floor and asked, "What's going on?"  The officer repeated his question. Taylor then appeared at the top of the steps.  Taylor followed orders to come downstairs and submit to arrest.  All of this occurred within one minute of the officer's entry.

While the arrests were underway, other officers followed their "standard procedure" and conducted a protective sweep of places in the house that were large enough to hold a person.  Some officers went upstairs to secure the bedrooms.  There they discovered a handgun and bag of marijuana on a dresser.  Other officers found a semiautomatic machine gun in a closet near the living room.

Around the same time, another officer spoke with the woman who had come downstairs.  She said that her baby was upstairs.  An officer took her to retrieve the

child. When she returned, an officer brought her to an isolated room so that she could nurse the baby. The woman told the officer that there was a gun in the room's couch. The officer searched the couch and found the gun underneath.

Officers then held Taylor and the woman arrested at the door for 30 minutes until transportation arrived. The police also obtained a search warrant for the house, citing the firearms found there. Acting on the warrant, the police found more drugs and drug paraphernalia. Based on the evidence found at Rendezvous on March 4, the government added Counts 13–15 to Taylor's indictment. Those counts charged him with maintaining the house to store and distribute marijuana, possession of guns in connection with drug trafficking, and possessing a firearm as a felon. The government also sought forfeiture of guns, ammunition, and some money found in the house.

Taylor moved to suppress evidence from the March 4 sweep, among other searches. The district court denied the motion. Taylor then entered a plea agreement under which the government would drop Counts 13–15 (among other counts) and Taylor would conditionally plead guilty to several other charges, including the forfeiture counts. The condition was that Taylor reserved his right to appeal the denial of his suppression motion. The district court entered judgment consistent with the plea agreement. Taylor now appeals.

## II.

### A.

We note at the outset that the government's agreement to drop Charges 13–15 does not moot Taylor's appeal. The government acknowledges that the two forfeiture counts to which Taylor pled guilty also turn on evidence seized during the March 4 sweep. *See generally United States v. Fifty-Three Thousand Eighty-Two Dollars*, 985 F.2d 245, 250 (6th Cir. 1993) ("[T]he exclusionary rule applies to a forfeiture proceeding because of its quasi-criminal nature"). Moreover, Taylor could withdraw his guilty plea if he prevails in this appeal, since his plea agreement provides as much. Whether the search was reasonable thus remains a live issue.

Taylor argues that the officers' entry into his home to execute his arrest warrant was unconstitutional because the police had no reason to believe that he was in the home at the time of the search. *See generally Payton v. New York*, 445 U.S. 573, 602–03 (1980); *United States v. Hardin*, 539 F.3d 404, 421–24 (6th Cir. 2008). As an initial matter, the police had previously found Taylor's mail at the house. But more to the point, the police did not barge into Taylor's home; they knocked first, which they are entitled to do. *See El Bey v. Roop*, 530 F.3d 407, 417 (6th Cir. 2008). And the person who answered the door was also a target of the arrest warrant. At that point, the police had reason to believe a suspect was inside the Rendezvous home—one was standing before them—and they legally entered to arrest her. *See Payton*, 445 U.S. at 603. The initial entry was therefore constitutional.

Next, Taylor argues that the sweep of his house was unconstitutional. The police can search a home pursuant to arresting someone there if there are "articulable facts" that would "warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). The sweep must last no longer than necessary to "dispel the reasonable suspicion of danger" and include only "spaces where a person may be found." *Id.* at 335–36. Here, Taylor contends the police swept the house not because they had an articulable suspicion that a dangerous third person was present, but merely because it was their "standard procedure."

The police cannot justify a sweep simply by citing their standard procedure. *See United States v. Williams*, 577 F.3d 878, 881 n.3 (8th Cir. 2009). But there were other justifications here. *Id.* First, the officers had reason to believe there were more people in the house. They had seen several people upon entering, and their prior surveillance and search of the Rendezvous home suggested that it had been a hub for a drug-trafficking organization. Second, the officers had reason to believe that the other people were armed: The 2008 search at Rendezvous uncovered guns, and the arrest warrants for some of Taylor's cohorts included gun charges. These two factors—that officers observed other individuals in the house and had reason to believe they were armed—can

be sufficient to justify a protective sweep. *See United States v. Beasley*, 199 F. App'x 418, 423 (6th Cir. 2006) (per curiam) (allowing protective sweep of defendant's hotel room where defendant had just been arrested in the parking lot for firearm and drug possession *and* officers had observed another person watching the arrest from inside defendant's hotel room). Third, the police had a specific basis to believe that people might be found in either the upstairs bedroom or the downstairs closet because they saw other people on each floor when they entered the house. Thus, the protective sweep permissibly included both of these areas. This fact alone distinguishes this case from *United States v. Akrawi*, 920 F.2d 418, 420 (6th Cir. 1990), where we found the protective sweep of a second floor unlawful because "agents heard no noises or voices that indicated anyone might have been in hiding on the second floor" and "articulated no specific basis for believing that the second floor . . . harbored any individual posing a threat to the agents."

Moreover, the sweep did not last longer than necessary. The officer who found the gun and drugs upstairs did so immediately after the first arrest. And the officer who found the machine gun in the closet testified that the closet was the "first spot" he cleared after entering the house.

Taylor counters that, under the guise of waiting for transportation, the police intentionally prolonged the sweep to gather additional evidence against him. But we view the evidence in the light most favorable to the government. *United States v. Navarrow-Diaz*, 420 F.3d 581, 584 (6th Cir. 2005). And here, at least two officers testified (credibly, in the district court's view) that they merely "h[eld] the scene" while waiting for transportation to take Taylor away. He cites no evidence to the contrary. The sweep was therefore justified under *Buie*, and thus the police lawfully obtained the evidence on the dresser and in the closet.

That leaves the officer's search under the couch. As noted earlier, a woman in the home had asked to nurse her baby; for privacy, the officer suggested that she use a back room; and the woman said there was a gun in the couch there. So the officer looked around the couch and found a gun underneath. Although this search was not part

of the protective sweep, it was reasonable.  Executing a warrant in a home—particularly a home used in a narcotics conspiracy—is "the kind of transaction that may give rise to sudden violence."  *Michigan v. Summers*, 452 U.S. 692, 702 (1981).  And officers executing an arrest warrant in a house are entitled to take "reasonable steps to ensure their safety."  *Buie*, 494 U.S. at 334.

We think it plain that the search under the couch was such a "reasonable step[.]" *Id.*  The officer was about to yield control of the area around the couch to one of the home's occupants.  The woman herself said there was a gun there.  He could not allow her potentially to take possession of the gun.  It was therefore reasonable for him to search for the gun and take possession of it himself.   Hence the search was constitutional.  *Cf. Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983) (holding that the police can conduct a protective search of the area within a person's grab space, even if the person is not under arrest, if they have reasonable suspicion to believe that the person is dangerous and can gain immediate access to a weapon); *United States v. Bohannon*, 225 F.3d 615, 617–18 (6th Cir. 2000) (upholding *Terry* frisk of person detained at home during execution of search warrant).

### B.

The government cross-appeals, arguing that the district court should have imposed a five-year sentence, to run consecutively with Taylor's ten-year sentence for the marijuana conspiracy, for possessing a gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). In the government's view, § 924(c)(1)(A) imposes a mandatory five-year minimum for possessing a firearm in furtherance of a drug crime so long as no other provision of law imposes a higher mandatory minimum for the § 924(c) violation.

The Supreme Court adopted the government's reading of the statute during the pendency of this appeal. *See Abbott v. United States*, 131 S. Ct. 18 (2010).  We therefore vacate Taylor's sentence and remand for resentencing consistent with *Abbott*.

Taylor's sentence is vacated, and the case is remanded for resentencing.