NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0267n.06

No. 24-3327

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 30, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTOINE DWAYNE RILEY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

---

Before: MOORE, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Law enforcement officers conducted a protective sweep of defendant Antoine Riley's bedroom following a standoff and located two firearms in plain view. A jury subsequently convicted him of being a felon in possession of a firearm. He appeals the district court's denial of his motion to suppress the evidence gathered from the protective sweep. We affirm.

I.

Early one morning, Riley's mother called 911 and reported that he had assaulted her in their home. When Columbus Police officers responded, she told them that Riley "had thrown her down on the ground and stomped her in the head and face several times." Officers also observed her corroborating "visible injuries." The officers then entered the home to contact Riley; he responded by barricading himself in his upstairs bedroom—his deadbolted door was just off the first floor living room, with stairs behind the door leading up to a small bedroom. During the almost two-hour standoff, officers learned Riley had guns in his bedroom. They also obtained

warrants to arrest Riley for domestic violence and assault but did not obtain any search warrants. Before they could carry out the arrest warrants, Riley came downstairs and peacefully surrendered in the living room. What briefly happened next is central to this appeal.

Four officers began a protective sweep of Riley's bedroom, which they captured on their body cameras. From the base of the stairs, Officer Kevin Kelley announced, "Columbus Police, make yourself known" and ascended to the bedroom with his service weapon drawn. Other officers followed. The bedroom was lofted and open with no door at the top of the steps. The officers briefly looked around the extremely cluttered and confined living space, including in a closet without doors. About twenty seconds after entering, officers can be heard saying "clear, clear" and "all clear" and started lowering their weapons. Kelley then asked whether anything was in "plain view." Seconds later, Kelley discovered two firearms in an open cardboard box that was in the doorway of the open closet. All told, officers were in the bedroom for a little over one minute.

A grand jury indicted Riley, a felon, for unlawfully possessing those two weapons under 18 U.S.C. § 922(g)(1). Riley moved to suppress the guns, asserting that the officers had exceeded their authority to engage in a protective sweep by looking for items in plain view after concluding the room was "clear" of potential threats. Following a hearing, the district court disagreed and denied his motion. A jury ultimately convicted Riley as charged, and he now appeals the denial of his motion to suppress.

II.

A.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated," and it provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As a result, "a warrantless search is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (citation omitted). The government relies on one of those exceptions: the protective sweep.

There are two types of protective sweeps. "The first type allows officers to 'look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" *United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990)). This "first type of sweep requires no probable cause or reasonable suspicion." *Id.* "The second type of sweep goes beyond immediately adjoining areas but is confined to . . . protective sweep[s] aimed at protecting the arresting officers.'" *Id.* (internal quotation marks and brackets omitted). It requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* (citation omitted).

B.

Riley primarily contends on appeal that the officers lacked authority to sweep the bedroom at all. He argues that neither type of protective sweep contemplated by *Buie* justifies the officers' search of the room because (1) the room was not "immediately adjoining the place of arrest" and (2) no facts suggested another individual was in the bedroom.

But that is not the argument he pressed in district court. In his motion to suppress, defendant did not contest the lawfulness of the protective sweep under *Buie* and instead argued

that the "officers no longer had a lawful purpose to remain in the bedroom" after they "cleared" it and that "[a]s soon as the bedroom was cleared, the Government's lawful right to be in the room ended." To be sure, his briefing suggested a challenge under the second type of search; he wrote that "at no point in time did the officers hold a reasonable belief that another individual was present in the bedroom, making the protective sweep unnecessary in the first place." But at the hearing on Riley's motion, the district court clarified Riley's argument, directly asking his counsel if she was "making the argument that there shouldn't have been a protective sweep in the first place?" She responded: "Absolutely not. . . , the protective sweep is completely appropriate." For this reason, the district court's order on the motion to suppress states that "Mr. Riley did not contest the Officers' right to conduct a protective sweep of the upstairs bedroom adjacent to his place of arrest."

Having affirmatively disclaimed any argument that the officers lacked the authority to enter his bedroom and sweep it under *Buie*, Riley waived any ability to advance the opposite argument on appeal. *See, e.g.*, *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023). And defense counsel's questioning during the evidentiary hearing about the presence of others in the house was not enough to preserve the *Buie* argument. It was that line of inquiry that prompted the district court's clarifying question on the officers' authority to protectively sweep his bedroom. Therefore, we cannot review this waived argument. *See id.*

C.

We thus turn to Riley's preserved claim on appeal—that the officers were no longer lawfully present in his bedroom when they discovered his firearms.

A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Buie*, 494 U.S. at 327. Such sweeps

do not amount to "a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found" and may "last[] no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335–36. While conducting a protective sweep, an officer may seize contraband found in plain view if its incriminating character is immediately apparent. *See Horton v. California*, 496 U.S. 128, 136 (1990). We measure officer conduct objectively. *See Buie*, 494 U.S. at 334.

The district court record demonstrated that the officers discovered the firearms while they were conducting a lawful protective sweep of the bedroom to ensure their safety. Although the officers said "clear" several times in the video, the district court did not find that the officers determined the room was clear before discovering the firearms. During the evidentiary hearing, the officers explained that using "clear" can mean that only a certain section of a room is clear. And one officer testified that he believed, based on his inquisitive tone, that he said, "clear" to ask the other officers if the room was clear in their view. The officers testified also that they holstered their guns situationally to avoid pointing weapons at one another in the tight quarters and that it was routine for them to "double-check" the work of others, especially given a recent event in which officers had "missed" someone hiding in a closet. The district court found this testimony "credible" and denied Riley's motion to suppress because the officers "were in the bedroom no longer than . . . necessary."

On appeal of a district court's motion-to-suppress decision, we review the district court's "findings of fact for clear error and its conclusions of law de novo." *Archibald*, 589 F.3d at 294 (citation omitted). "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Collazo*, 818 F.3d 247, 253 (6th

Cir. 2016) (citation omitted). Because the district court denied the suppression motion, "we must view the evidence in the light most favorable to the government." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (citation omitted).

Viewing the facts in that light, we discern no clear error in the district court's finding of fact that the officers were still sweeping Riley's room when they saw his prohibited firearms in plain view. As depicted by the body cameras, officers entered a confined and cluttered space with many places for a person to hide. They swept the room no longer than necessary—less than one minute—and reasonably checked the work of others as they hastily ensured their safety. *See, e.g.*, *United States v. Taylor*, 666 F.3d 406, 410–11 (6th Cir. 2012); *United States v. Beals*, 698 F.3d 248, 267 (6th Cir. 2012). That a few seconds passed after the officers began lowering their weapons and asking if the space was indeed clear is not enough, in our view, to transform the quick protective search into an unconstitutional one.

## III.

For these reasons, we affirm the district court's judgment.