**UNITED STATES of America, Plaintiff,**

v.

**Chad MARKS, Defendant.**

**No. 03–CR–6033L.**

United States District Court, W.D. New York.

Sept. 12, 2012.

Robert Marangola, Everardo A. Rodriguez, U.S. Attorney's Office, Rochester, NY, for Plaintiff.

Jillian S. Harrington, Monroe, NJ, Thomas P. Theophilos, Law Offices of Thomas P. Theophilos, Buffalo, NY, Donald M. Thompson, Rochester, NY, for Defendant.

*DECISION AND ORDER*

DAVID G. LARIMER, District Judge.

Defendant Chad Marks ("Marks") was convicted on multiple counts after a jury trial and was sentenced by the Court principally to a term of forty years imprisonment. The forty-year sentence was the minimum sentence permitted. Marks was convicted of drug trafficking charges, which provided for a ten-year minimum sentence, and two separate counts of possession of a firearm in furtherance of the drug trafficking crimes, in violation of 18 U.S.C. § 924(c). Marks received a consecutive five-year term on the first § 924(c) conviction and a twenty-five-year consecutive term on the second.

Prior to sentencing, Marks filed a *pro se* motion (Dkt. # 301). This motion was styled as a habeas corpus petition under 28 U.S.C. § 2241 and was filed in reply to the Government's Opposition (Dkt. # 295) to two earlier motions filed by Marks's counsel, Donald Thompson ("Thompson"). In the Government's Opposition, Assistant United States Attorney Everardo A. Rodriguez ("AUSA Rodriguez") discussed at length the chronology of the prosecution, and Rodriguez stated in his recitation that, prior to trial, he had suggested to Thompson that Marks take a guilty plea "to a straight 20 years (without any additional reduction for cooperation)." (Government's Opposition, Dkt. # 295, at 15–16).

The essence of Marks's *pro se* motion was his claim that attorney Thompson provided ineffective assistance of counsel under the Sixth Amendment for failing to advise Marks of the twenty-year plea offer that was allegedly extended to Thompson by AUSA Rodriguez. Marks claims that his attorney never advised him of that offer and suggests that, had he known of it, he would have accepted it. This Court,

however, declined to entertain the *pro se* motion prior to sentencing.

Marks appealed this Court's judgment and, by decision filed October 19, 2010, the Court of Appeals for the Second Circuit affirmed the conviction in all respects but remanded the case for a further factual finding on what it characterized as Marks's FED. R. CRIM. P. 33 motion for a new trial based on alleged ineffective assistance of counsel. *See United States v. Brown,* 623 F.3d 104, 115 (2d Cir.2010). The Second Circuit directed this Court to hold a hearing to determine whether Thompson conveyed the twenty-year plea offer to Marks and "whether Marks would likely have accepted that offer had it been made to him." *Id.*

On June 16, 2011, this Court conducted a hearing on the remand. During the hearing, the Court took testimony from Thompson and defendant Marks, and received into evidence an affidavit from AUSA Rodriguez (Dkt. # 295). In addition, an exhibit (Ex. 1) was received which consisted of the numerous handwritten letters Marks had written to Thompson during the several years the action was pending.[1]

The Second Circuit also directed this Court to determine whether Marks's late filing of the Rule 33 motion was the product of "excusable neglect." However, at the hearing the Government conceded that it did not contest that Marks's untimely filing was due to excusable neglect.[2]

At the conclusion of the hearing, the Court granted Marks and the Government time to obtain the transcript of the hearing and file post-hearing memoranda. Thereafter, the Court allowed the parties to delay their filings upon learning that the United States Supreme Court had granted *certiorari* in two separate cases which both raised issues relating either to counsel's failure to communicate a plea offer to a defendant or failed to give proper advice about accepting a plea offer. On March 21, 2012, the Supreme Court decided both of those cases. *See Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) and *Lafler v. Cooper,* — U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Thereafter, both Marks and the Government filed memoranda discussing the evidence at the hearing as well as the two recently decided Supreme Court decisions (Dkt. ## 403, 405, 406).

## DISCUSSION

■ Marks claims he received ineffective assistance of counsel because of counsel's failure to advise him of a twenty-year plea offer. In its decision remanding the case, the Second Circuit set forth the well-established *Strickland* standards for determining whether a defendant has received ineffective assistance of counsel.

> The legal standards applicable to Marks's ineffective assistance claim are well-established. A defendant's Sixth Amendment right to counsel is violated

---

1.  For ease of reference, these letters, sorted chronologically, have been Bates stamped from pages 1 to 112.

2.  The Second Circuit also remanded this case for resentencing based on the controlling law at the time. In *United States v. Williams,* 558 F.3d 166 (2d Cir.2009), and *United States v. Whitley,* 529 F.3d 150 (2d Cir.2008), the Second Circuit ruled that consecutive sentences for the two 924(c) violations was

not supported by the statute. However, as the parties now recognize, the United States Supreme Court essentially overruled that holding in its recent decision in *Abbott v. United States,* —— U.S. ——, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010). At the hearing before this Court on June 16, the defendant thus conceded that resentencing on that issue was no longer necessary in light of the Supreme Court's decision.

when he receives ineffective assistance. To prove such ineffective assistance, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Brown,* 623 F.3d at 112 (quoting *Pham v. United States,* 317 F.3d 178, 182 (2d Cir. 2003), and *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Marks, now moving under FED.R.CRIM.P. 33, has the burden of proof under the *Strickland* test of establishing that his attorney's representation fell below the standard of reasonableness and that but for that error, the result of the proceeding would have been different.

■ The two recent Supreme Court decisions, *Missouri v. Frye, supra,* and *Lafler v. Cooper, supra,* set forth the requisite burden of proof that a defendant must meet to establish an ineffective-assistance claim relating to a failure to communicate a plea offer. To show prejudice from ineffective assistance of counsel based on counsel's failure to communicate a plea offer, the defendant "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer" had he known about it. *Frye,* 132 S.Ct. at 1409. *See also, Lafler,* 132 S.Ct. at 1385.

Based on the Second Circuit's remand decision, the *Strickland* standards, and the recent Supreme Court rulings, the issues before the Court are clear: the Court must determine (1) whether the Government did in fact offer Thompson a twenty-year plea offer; (2) whether Marks's counsel, Thompson, ever conveyed that offer to Marks; and, importantly, (3) whether Marks would have accepted that plea deal at the time it was offered by the Government in May 2004, over two years before commencement of the trial.

After reviewing all the evidence, I find that AUSA Rodriguez did suggest to Marks's attorney, Thompson, that Marks resolve the pending charges by pleading guilty with a set, agreed-upon sentence of twenty years imprisonment with no ability by Marks or his counsel to seek a reduction based on Marks's alleged cooperation. This discussion occurred in May 2004. In his affidavit, (Dkt. # 295, pp. 15–16), AUSA Rodriguez concedes that he raised the possibility of such a plea. I accept, then, the prosecutor's representation that there was such a discussion. AUSA Rodriguez's affidavit was accepted at the hearing before the Court and, although he was present and available to be examined further, neither the Government nor defendant elected to do so.

I make this finding even though the other participant in the conversation, attorney Thompson, was less than helpful in resolving whether the offer was made at all by the prosecutor. Thompson testified at the hearing[3] that he had no present recollection and did not remember having any conversation with AUSA Rodriguez about the offer of a twenty-year plea and sentence. Likewise, he therefore did not recall whether he passed that offer and sentence on to Marks. At the hearing before the Court, Thompson testified that he kept no notes about conversations with the prosecutor and made no notations concerning conversations that he may have had with Marks. Marks also testified at the hearing and repeated what he had

---

**3.** Thompson retained counsel to represent him at the remand proceedings. Through counsel, Thompson declined to discuss the issues before the hearing with either the Government or defendant's counsel, and would only testify if subpoenaed for the hearing.

stated in his original *pro se* motion (Dkt. # 301), that Thompson never conveyed any such offer to him.

In spite of Thompson's lack of recollection, I accept AUSA Rodriguez's statements on the matter and find that Marks has established, by a preponderance, that the plea offer was made by AUSA Rodriguez to Thompson. In his affidavit, AUSA Rodriguez reports (Dkt. # 295, at 15–16) that when Marks's "cooperation" failed to pan out concerning the Xerox Federal Credit Union robbery, AUSA Rodriguez suggested, apparently in a telephone conversation, that Marks "plea[d] to a straight 20 years (without any additional reduction for cooperation)." Apparently Marks's alleged efforts to cooperate concerning the robbery failed miserably since the police believed that he had identified the wrong person.

AUSA Rodriguez's recollection concerning Thompson's reply to the offer is telling. Thompson said that the offer involved "too much time" and that he did not believe that Marks "would like it." (Dkt. # 295, p. 16). In light of the pages and pages of correspondence from Marks to Thompson, Thompson's opinion that Marks would not find the offer to his liking is an immense understatement.

What then should the Court make of Thompson's lack of recollection about the plea offer? First of all, the alleged conversation between AUSA Rodriguez and Thompson occurred in 2004, over eight years ago. The passage of time certainly affects one's recollection of matters, even seemingly significant ones. Thompson did not flatly deny that the conversation took place as reported by AUSA Rodriguez; he just does not now recall it.

The matter at hand—a plea offer—was objectively an item of obvious significance. In a vacuum, one would normally think that the participants would have some recollection of it. The receipt of a plea offer, even if conveyed orally over the telephone, as this one apparently was, should ordinarily have been such a notable occurrence that an experienced criminal lawyer [4] would have remembered it and relayed it to the client. Generally, relaying such plea offers is an important part of providing effective representation in a criminal case.

The plea offer was hardly a sweetheart deal, though. In fact, it was onerous: twenty years imprisonment without any ability to seek reduction from the Court. Counsel's lack of recollection is easily explained then. It would have been totally unacceptable to Marks, based on all we know about Marks's written communication with his attorney at the time. The prosecutor might as well have been offering Marks a one-way trip to the moon. Although Thompson's now-claimed lack of memory, in a vacuum, might seem suspect, it is clear to my satisfaction, in view of the tack taken by Marks in his numerous writ-

4. Attorney Thompson is and was indeed an experienced criminal lawyer. He has practiced in both state and federal court for decades and has done so with distinction. He has received significant awards and commendations from both the local Monroe County Bar Association and the New York State Bar Association, including the 2011 Founder's Award from the Judicial Process Commission, the 2010 Service of Justice Award the from the New York State Defenders Association, the 2010 New York State Criminal Defense Lawyers' Gideon Champion of Justice Award and the New York State and Monroe County Bar Associations' 2005 Charles F. Crimi Memorial Awards. *See* The Daily Record, Feb. 7, 2011 (available at http://nydailyrecord.com/blog/2011/02/07/dedicated-defender-thompson-is-on-a-roll/); Justicia: Newsletter of the Judicial Process Commission, May/June 2011 (available at http://archive.constantcontact.com/fs064/1102667451200/archive/1105487639811.html).

ings to Thompson at the time, that Thompson knew that Marks would *never* have accepted the twenty-year plea deal proposed by AUSA Rodriguez which, by its terms, foreclosed any possibility for Marks to get a benefit for his purported cooperation.

Should Thompson have formally presented the deal—a pretty onerous one—to Marks? The answer is yes, and he may well have done so. But it is clear to me that it would have been a fruitless endeavor in light of Marks's consistent and repeated statements about the kind of plea and sentence that he sought. In sum, in May 2004, a twenty-year plea deal, without Marks's ability to urge leniency at sentencing based on his cooperation, would never have been accepted by Marks.

Marks now glibly states that he would have taken the twenty-year deal had he been aware of it. I do not believe it, and I find Marks's statement to lack credibility. Marks, having elected to proceed to trial, is now serving a forty-year sentence. Of course, he would now like a deal to cut that sentence in half. Who wouldn't? The test, though, is not what Marks would *now* like, but what he would have accepted eight years ago in 2004 when the offer was allegedly made prior to his trial, conviction and sentence.

In my view, based on AUSA Rodriguez's affidavit, Marks's failure to ever agree to any of the plea proposals that were offered to him, and his dogged writings to his attorney, show that taking a twenty-year plea, coupled with the inability to seek a further reduction for cooperation, *never* would have been accepted by him. He would, instead, have rejected it out of hand.

All of this explains why the telephonic, twenty-year offer, coupled with the Government's refusal to allow argument for a further reduction based on alleged cooper-

ation, might not be recalled by Marks's attorney at the hearing in 2011. In truth, it was just not that significant. It was virtually a non-offer, since the twenty-year term was far more than Marks was seeking, and it precluded Marks from getting any reduction or benefit from what Marks perceived to be his valuable cooperation.

In light of this context, it is not completely surprising that Thompson could not recall this offer. There was really nothing to consider. Marks had repeatedly expressed strong feelings about what he would accept as a range of sentence for a plea and, most importantly, his adamant opinion—not shared by Government—about the degree and usefulness of his cooperation.

In its remand, the Second Circuit framed the issue for this Court relative to the *Strickland* test as to whether the defendant was prejudiced by his attorney's alleged errors. Specifically, the Court must determine whether "there was a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different." 623 F.3d at 115.

In the context of this case, then, the task is to determine whether there was, in 2004, a "reasonable probability" that had the twenty-year deal been conveyed, Marks would have taken it and not proceeded to trial. I find that there was no reasonable probability of Marks committing himself to be sentenced to twenty years without the possibility of trying for a reduction based on his cooperation, which he consistently touted as of inestimable value to the Government.

As will be discussed below, Marks repeatedly stressed that his "cooperation" should entitle him to a sentence more than a decade lower than the twenty-year offer. Based on the correspondence here (Ex. 1),

I firmly believe that Marks would have scoffed at AUSA Rodriguez's twenty-year deal, particularly coupled as it was with no further benefit for cooperation.

AUSA Rodriguez's affidavit describes the lengthy and ongoing efforts to get Marks to sign a plea agreement with a cooperation provision. Marks balked at all of them. On appeal, the Second Circuit soundly rejected Marks's attempt to compel the Government now to allow Marks to plead to "an unspecified plea offer previously made to him during plea negotiations" with the prior Assistant United States Attorney. 623 F.3d at 110.

In many cases, it is difficult to divine what a defendant's state of mind was, when one is later trying to ascertain what the defendant might have done had he been apprised of a particular plea offer. No such problem exists here, though, since we have the benefit of numerous and detailed contemporaneous writings from Marks to his attorney. Marks's numerous writings to his attorney precisely reflect his state of mind at that time and show that there was no reasonable probability that Marks would have taken the plea deal in May 2004, had he known of it.

I have reviewed all of the redacted correspondence (Ex. 1) from Marks to Thompson. It consists of 112 pages of writings. I have also reviewed the unredacted letters, which I think should now be released, the attorney-client privilege having been waived by dint of the claimed ineffective assistance of counsel charge. The letters in Exhibit 1 show a consistent theme from Marks. He discussed "a 5K" for cooperation, with the expected result that he would receive a greatly reduced sentence. That theme does not vary much even when it is apparent that, if convicted of the firearms offenses that were added

by the superseding indictment on September 16, 2004, Marks faced thirty to forty years in prison.

All the letters are worth reviewing, but I refer only to a sampling here which, in my view, clearly established Marks's true state of mind concerning plea deals at around the time the alleged plea offer was made by AUSA Rodriguez to Thompson.

In an early letter dated March 12, 2003, Marks wants to "get [his] foot through the door for the 5K1 departure" and later he states that he wants to work his way "down the ladder from Ten years." (03).[5] A few weeks later, Marks opines that with cooperation "we can beat them [the Government] down lower 7 [sic] or less." (06). This is a clear reference to cooperation to get Marks a seven-year sentence.

A month later, Marks returns to the same theme. Marks says at most he expected twelve to fifteen years (09) but hopes for a sentence of eight years with cooperation (08). In a July 16, 2003 letter, Marks says that a possible sentence of "24 years is unbeleivable [sic]." (11). He acknowledges that Thompson had told him of a possible ten- to twelve-year sentence, but Marks pushed to "get them farther down than that." (10). Marks often repeats his desire to get below the ten-year minimum because of cooperation and get a sentence of between seven and nine years. (22).

All of this is premised on Marks's belief that his cooperation would translate to a lower sentence. Even when discussing a committed, agreed-upon sentence pursuant to FED.R.CRIM.P. 11(c)(1)(C), Marks always adds the additional requirement for a "5K open departure." (22, 27, 32). Rule 11(c)(1)(C) provides for no such conditional arrangement, however. So, in spite of the possible agreed-upon nature of the sentence under Rule 11(c)(1)(C), Marks still

---

**5.** "03" and similar pagination signifies the Bates stamped documents from Exhibit 1.

wanted the ability to parlay his perceived cooperation into a lower sentence. The Government, of course, never agreed to such an arrangement.

In fact, in one letter, Marks opines that he could provide enough cooperation that he could "work [his] way to the street" and out of custody. (32). This and other comments clearly reflect Marks's unrealistic view of his own worth and of his ability or his attorney's ability to get the Government to give Marks extremely favorable treatment. With this frame of mind, it is inconceivable that Marks would have suddenly taken *any* deal involving a firm twenty-year sentence.

Marks also had a penchant for lecturing Thompson on what Marks thought the applicable Sentencing Guidelines would (or should) be. For example, in a May 1, 2004 letter (31–33) Marks speaks of having an Offense Level of 33, and opines that with a drug quantity less than 500 grams plus a two-point enhancement as a manager, he would face a specific sentence. Again, Marks mentions a plea in that range under 11(c)(1)(C) but "with the 5K open departure." (33).

A few weeks later, on June 27, 2004, Marks mentions the same Offense Level of 33 but again with the "open departure." (36). He hopes to get a six- to eight-level reduction for cooperation, again with that open departure. (37).

In August 2004, Marks returns to this theme (41–42). He seeks to get a plea with an Offense Level of 33, and a Criminal History Category of III, "with an open departure option." (42).[6]

Earlier Marks had discussed his view of the Guidelines, expressing his belief that with the right reduction for cooperation (six or eight levels), his range would be either 108–135 months or perhaps 135–168 months. (39). Those were, of course, well below the 240–month plea agreement allegedly offered by AUSA Rodriguez in May 2004 without the benefit of any reduction for cooperation.

After the return of the superseding indictment in September 2004, Marks, on at least a dozen occasions, insisted to Thompson that he was "not guilty of the firearms charges." (47, 49, 53, 59, 62, 92). In August 2005, Marks told Thompson that he was guilty of the drug conspiracy but that he "was not guilty of those guns and I am not coping [sic] out to them." (62). Marks recognized with the two gun charges he could face an additional thirty years imprisonment. (65).

In his September 12, 2005 letter (65–73), Marks emphasizes all of his alleged cooperation (67). He wants the gun charges "thrown out" and relying on his view of the Supreme Court's *Booker*[7] decision, claims he should only be facing five to nine years imprisonment (67–68) and repeats that he will go to trial on the gun charges "because [he's] not guilty of this shit." (68). Later, Marks tells Thompson that he will plead to the drugs but go to trial on the firearms offenses. (80). Marks consistently returns to his belief that with a six- to eight-level reduction for his perceived cooperation, he should be in the seventy to one hundred and eight-month range for sentencing. (78). Marks, in one letter, claimed that he had done more cooperation than others who also cooperated, for example, Richard Ross and Tommy Hardy. (97–

---

**6.** Such a plea under the 2003 Guideline Book without considering cooperation, would have resulted in a range of 168–210 months.

**7.** Presumably a reference to *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

98).[8]

One of the main themes of Marks's correspondence is that he had proffer sessions with the Government, provided information and, in his view, provided the type of cooperation that justified a significant sentence reduction. The problem is that Marks was never content with the proffered plea agreements and never signed one, although several were presented to him.

In fact, correspondence from Thompson (111–112) shows that Thompson sent Marks proposed plea agreements on or about December 17, 2003 and January 19, 2004. The December 2003 plea offer specified that Marks's Guidelines sentencing range would be 292 to 365 months, and that the Government could, within its discretion, move for a downward departure under § 5K1.1 of the Guidelines, for a sentence no lower than 120 months. Dkt. # 398–1 ¶¶ 14, 25. The January 2004 offer was similar, but provided that if the Government determined that a 5K1.1 motion was warranted, the Government would request a sentencing range of 210 to 262 months. Dkt. # 398–1 ¶ 25. Marks rejected both offers.

Clearly, Marks's view as to the value of his cooperation far exceeded the Government's view. AUSA Rodriguez discussed at length the proffer sessions, Marks's not-so-substantial cooperation and Marks's bad acts and criminal acts, even while incarcerated, that vitiated any cooperation. These included threats to kill cooperating witnesses, to torture his wife's new boyfriend, and about a dozen disciplinary charges filed against Marks while he was in custody, including several assaults against other inmates (Dkt. # 295, p. 19–28).

Marks never seemed to get over the fact that the Government did not share his opinion about his cooperation but, more to the point, Marks never stepped up and signed any plea agreement allowing him to get the benefit of cooperation. The Second Circuit has already addressed this in its decision affirming Marks's conviction and rejecting his arguments concerning specific performance relating to any purported agreement.

All this correspondence occurred both before, during and after the time AUSA Rodriguez conveyed the twenty-year plea offer to Thompson. It is clear from all of this that Marks never would have taken that offer when it was made. Marks steadfastly maintained that his cooperation entitled him to a drastically reduced sentence, and he insisted throughout that any plea deal had to contain a provision allowing him to seek the benefit of his cooperation regardless of whether the Government so moved. Furthermore, Marks consistently spoke of wanting a deal that would put him below the ten-year minimum on the drug charge. He often spoke of a range of between five to nine years. Furthermore, he repeatedly told his lawyer that he was not guilty of the firearms charges and that he would go to trial rather than plead to those charges. In short, Marks always sought a better deal in part based on his view as to the value of his so-called cooperation.

Any deals mentioned by Marks *always* contained the proviso that there would be a "5K open" aspect, which to him meant that he would be able to try to persuade the sentencing court to give him a benefit for cooperation whether the Government moved under 5K or 18 U.S.C. § 3553(e) or not.

This mindset was vividly underscored once again on the second day of trial in 2006. Apparently, even at that late date,

---

**8.** In fact, both Ross and Hardy ended up as witnesses against Marks at his trial.

there had been some plea discussions. But, it is significant to note that the offer from the Government was, once again, an 11(c)(1)(C) plea to a specific term of imprisonment, which would have prevented Marks from seeking any benefit from the Court for his previous cooperation. Thompson said that Marks rejected that plea offer because he was precluded from seeking a reduction for what he styled as cooperation. (Dkt. # 259, Transcript of June 14, 2006, p. 325). The Government refused to make any 5K motion and Marks refused to accept the 11(c)(1)(C) offer since it did not contain an ability for him to seek a reduction for cooperation.

I find, therefore, as a fact that the assigned prosecutor, AUSA Rodriguez, made an oral offer to defense counsel in May 2004 for defendant to plead to a charge resulting in an agreed-upon twenty-year prison sentence.

Since defense counsel has no recollection of such an offer and no recollection of conveying it to Marks, I am unable to determine with certainty whether or not the offer was conveyed to Marks.

But, I further find, assuming for the purposes of this proceeding that the offer was not conveyed, that defendant has failed to establish that there was a reasonable probability that he would have accepted the unconveyed offer. *See United States v. Watson*, No. 11–CR–0166, 2012 WL 1831430, at *7 (N.D.Okla. May 18, 2012) (denying defendant's motion for a new trial based on trial counsel's failure to communicate government's plea offer, where, at conclusion of evidentiary hearing, "[t]here [wa]s no evidence from which the Court could find that there was a reasonable probability that defendant would have accepted the plea offer"); *Duncan v. United States*, No. 09–CV–0900, 2010 WL 3038717, at *7 (S.D.Ill. Aug. 3, 2010) (denying defendant's petition under 28 U.S.C. § 2255 based on counsel's alleged failure to apprise him of government's plea offer, where "there [wa]s no evidence that Duncan would have accepted the plea offer if tendered").

I further find defendant's testimony that he would have accepted the plea offer had it been conveyed to him to lack credibility.

## CONCLUSION

Defendant's motion, characterized by the Second Circuit as a Rule 33 motion for a new trial, is in all respects DENIED.

IT IS SO ORDERED.