ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice,
for the Court:
¶ 1. The trial court sentenced Charles Harris as a habitual offender to the maximum twenty years for aggravated assault, and to ten years for being a convicted felon who used a firearm in the commission of a felony. But the statute that authorizes a ten-year sentence for using a firearm in the commission of a felony does not apply where a “greater minimum sentence” is available under some other provision of law. And because the minimum sentence available for Harris’s habitual status exceeded ten years, we vacate Harris’s sentences and we reverse and remand to the Circuit Court of Washington County for re-sentencing.
BACKGROUND FACTS AND PROCEEDINGS
¶ 2. Upon hearing six gunshots and finding Mershelda Johnson lying next to a nearby road, John Dempsey, a casino security guard, called the police, who found Johnson conscious but unable to talk. After she recovered several months later, Johnson told police that Charles Harris had shot her. A forensic DNA analyst found Johnson’s DNA, along with the DNA of an unknown individual, in Johnson’s fingernail scrapings.
¶ 3. Harris was arrested and charged with aggravated assault and possession of a firearm by a convicted felon. Harris also was charged under two sentencing enhancements: as a habitual offender under Section 99-19-81, and for using or displaying a firearm during the commission of a felony under Section 97-37-37(2).[1]
¶4. Before trial, Harris stipulated that he was a felon and asked the court to prohibit the State from mentioning his felony conviction. The trial judge did not rule on the motion, stating instead that he would look at the issue when it came up during trial.
¶ 5. During the trial, the State played an audio recording of a statement Harris had made to police, in which Harris stated that he had been convicted previously of possessing a firearm as a felon and possession of marijuana with the intent to distribute. Defense counsel objected, stating that the audiotape was cumulative and contained hearsay. The trial judge overruled the objection. After the audiotape had been played to the jury, Harris’s counsel objected to the reference to the prior conviction. The trial judge, at defense counsel’s re *171 quest, gave the jury a limiting instruction on the prior convictions: “This Court instructs the jury that this prior felony conviction may only be used for the limited and sole purpose of proving the prior felony conviction element of Count II, Felon in Possession of a Deadly Weapon.”
¶ 6. Johnson testified that, several days before the shooting, she and Harris had argued because she had taken some of Harris’s tools. On the day of the shooting, according to Johnson, Harris drove next to her while she was hanging out on a street corner. Johnson said that she asked him to sell her some crack; Harris agreed and then drove her to a levee near the Lighthouse Point Casino. Harris gave her crack cocaine and then, instead of asking for money, he asked for sex. Johnson refused and exited the car, telling Harris that she planned to call police and that she would tell Harris’s wife he had asked her for sex. Johnson testified that, as she walked away, she heard a gunshot. She next remembered waking in the hospital.
¶7. According to Dr. Michael Merrell, who treated Johnson at the hospital and ordered a trauma panel (a group of lab tests), Johnson had cocaine, benzodiaze-pines, and marijuana in her system the night she was shot. On cross-examination, when defense counsel asked Dr. Merrell for the common side effects of the drugs, the State objected, arguing that Dr. Mer-rell was not qualified as an expert. The trial court sustained the objection.
¶ 8. During Dr. Merrell’s proffer, he testified he had performed a residency in Mobile, Alabama, he had treated 200 to 300 trauma patients during the previous three years he had been working in the emergency room, and he was familiar with the common side-effects of cocaine, benzo-diazepines, and marijuana. Dr. Merrell said that the common side-effects of ben-zodiazepines included dizziness, drowsiness, possible blurred vision, and decreased alertness and concentration. Dr. Merrell also said that cocaine can increase alertness but decrease the ability to make proper judgments on what a person is perceiving. Also, according to Dr. Merrell, cocaine does not affect a person’s ability to identify, but can cause paranoia. And because marijuana is a hallucinogenic, Dr. Merrell said that it also could change a person’s perception. Dr. Merrell concluded that he could not know whether Johnson took any of the drugs the day she was shot.
¶ 9. Harris called a DNA analyst who excluded Harris as a potential contributor of the DNA obtained from Johnson’s fingernail scraping. After closing arguments, the jury found Harris guilty of aggravated assault and of being a felon in possession of a deadly weapon. The trial judge sentenced Harris to twenty years for aggravated assault — the maximum for a habitual offender — and ten years for possession of a firearm by a convicted felon. In addition, the trial judge sentenced Harris to an additional ten years for using a firearm as a convicted felon during the commission of another felony. All sentences were consecutive, without probation or parole.
¶ 10. Harris appealed his convictions and sentences, raising three issues: (1) he had received an illegal sentence; (2) the trial court had erred by limiting his cross-examination of Dr. Michael Merrell; and (3) the trial court had erred by allowing the introduction of the specific nature of his convictions despite a valid stipulation. The Court of Appeals affirmed on each issue.[2] We granted certiorari.
*172 ANALYSIS
¶ 11. We affirm the Court of Appeals on issues two and three, but reverse and remand on issue one. And, because we find no error in the Court of Appeals’ analysis of issues two and three, we decline to address them.

The trial court illegally sentenced Harris by imposing the ten-year sentence under Section 97-37-37(2) when Harris already had been sentenced to a mandatory twenty years as a habitual offender.

¶ 12. Harris argues that his additional, ten-year sentence imposed under Section 97-37-87(2) — also known as the firearm-enhancement statute — is illegal. That section states:
Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any convicted felon who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of ten (10) years, which sentence shall not be reduced or suspended.[3]
¶ 13. Specifically, Harris argues that Section 97-37-37(2) does not apply if another provision of law provides a minimum sentence of more than ten years.
¶ 14. Harris was charged and convicted for aggravated assault, a felony that, under Section 97-3-7(2), imposes a maximum twenty year sentence.[4] But, because Harris was sentenced as a habitual offender under Section 99-19-81, “[an]other provision of law” required the trial court to sentence him to the full twenty-years. So the minimum sentence that Harris received was twenty years — a sentence greater than the ten-year sentence under the firearm-enhancement statute. Therefore, because Section 99-19-81 provided a “greater minimum sentence” in Harris’s case, the trial court should not have sentenced him also under Section 97-37-37(2).
¶ 15. Harris did not challenge the legality of his sentence at trial. But as the Court of Appeals noted, this Court has held that defendants have a fundamental, constitutional right to be free from illegal sentences,[5] and plain error exists when an error affects a defendant’s substantive or fundamental right.[6]

Abbott v. United States

¶ 16. The Court of Appeals found Section 97-37-37(2) inapplicable based on its reading of Abbott v. United States[7] In Abbott, the Supreme Court considered whether a similar federal firearm-enhancement statute’s “except” clause spared a defendant from a separate, consecutive sentence when the defendant faced a greater mandatory minimum for a different conviction.[8]
¶ 17. One of the defendants, Abbott, faced a mandatory fifteen-year minimum under the Armed Career Criminal Act (“ACCA”).[9] The other defendant, Gould, faced a mandatory ten-year minimum under 21 U.S.C. § 841(b)(1)(A) for conspiracy *173 to possess cocaine base with the intent to distribute.[10] Both defendants also were charged with violating 18 U.S.C. § 924(c)(1)(A)(i) for possessing a firearm in furtherance of a drug-trafficking crime, which required an additional five-year sentence on top of the sentences already imposed by their predicate crimes.[11] Convicted in separate district courts, Abbott was sentenced to twenty years, and Gould to sixteen years and five months.[12]
¶ 18. Both defendants appealed, each challenging his five-year consecutive sentence under Section 924(c).[13] Specifically, Abbott argued that the ACCA’s mandatory fifteen-year minimum triggered the statute’s “except” clause, because the fifteen-year minimum qualified as “[an]other provision of law” that “provided ... a greater minimum sentence.”[14] Gould argued the same for his ten-year minimum sentence.[15] Section 924(c) provided, in part:
Except to the extent that a greater minimum sentence is otherwise pro-aided by this section or any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime (i) be sentenced to a term of imprisonment of no less than 5 years.... [16]
¶ 19. The question before the Court was whether the “except” clause shielded a defendant from a consecutive, separate sentence for a Section 924(c) conviction when the defendant faced a greater minimum sentence under a different count of conviction.[17] The Court held that the “except” clause applied “only when another provision — whether contained within or placed outside Section 924(c) — commands a longer term for conduct violating § m(c).”[18]
¶ 20. In its analysis, the Court explained that the phrase “any other provision of law” qualifies Section 924(c)(l)(A)’s principal clause, which punishes the possession of a firearm in furtherance of specified predicate crimes.[19] Thus, the five-year mandatory minimum would be excepted only if another provision provided a greater minimum sentence for using, carrying, or possessing a firearm in connection with a drug-trafficking crime or crime of violence.[20]

Interpreting Mississippi’s firearm-enhancement statute

¶ 21. When interpreting a statute, we first will decide whether the statute is ambiguous.[21] If it is not, we will apply the statute’s plain meaning.[22]
*174 ¶22. Section 97-37-37(2), modeled after the federal firearm-enhancement statute, places a mandatory ten-year, additional sentence on “any convicted felon who uses or displays a firearm during the commission of any felony.”[23] But the statute does not apply in certain circumstances, evidenced by this clause: “Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law.”[24]
¶23. The Court of Appeals found no reason to apply a different interpretation than was applied by the United States Supreme Court in Abbott. Accordingly, the Court of Appeals implicitly held that the “except” clause applies only to another provision of law providing for a greater minimum sentence for a convicted felon who uses a firearm during the commission of a felony.
¶24. But Mississippi’s statute and the federal statute are different in several significant ways. First, Mississippi’s Section 97-37-37(2) applies to “any felony,”[25] while the federal statute applies only to drug-trafficking crimes or crimes of violence.[26] Thus, our statute is broader, which in turn allows our “except” clause to apply more broadly as well.
¶25. Second, the federal statute contains other, possibly higher sentences within its own subsection — namely, seven years for brandishing a firearm and ten years if the firearm is discharged [27] — while our statute applies the same ten-year sentence for any use of the firearm.[28] Were we to apply Abbott to the Mississippi statute, there would be no sentence to which the “except clause” would apply. And under the rules of statutory construction, we are loathe to find any part of a statute meaningless.[29]
¶ 26. Instead, we hold that Section 97-37-37(2) is plain and unambiguous. The statute mandates an additional ten-year sentence for “a convicted felon who uses or displays a firearm during the commission of any felony,” unless “any other provision of law ” provides for “a greater minimum sentence.”[30] Here, Harris qualified as a habitual offender under Section 99-19-81, which required that Harris be sentenced to the maximum sentence of twenty years for aggravated assault.[31] Thus, Section 99-19-81 — another provision of law — provided a “greater minimum sentence.” Therefore, the trial court erred by sentencing Harris under Section 97-37-37(2).
CONCLUSION
¶ 27. The trial court erroneously sentenced Harris to an additional ten years under Section 97-37-37(2). We therefore affirm the Court of Appeals’ decision on issues two and three, but we reverse the Court of Appeals and the trial court on issue three and vacate Harris’s sentences and remand for the Circuit Court of Washington County to conduct another sentencing hearing consistent with this opinion.
*175 ¶ 28. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON, AFFIRMED. SENTENCES ARE VACATED AND THE CASE IS REMANDED TO THE CIRCUIT COURT OF WASHINGTON COUNTY FOR A SENTENCING HEARING.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. KING, J., NOT PARTICIPATING.

. See Miss.Code Ann. §§ 99-19-81 (Rev. 2007); 97-37-37(2) (Rev.2006). The State originally charged Harris as a habitual offender under Section 99-19-83, but later moved to amend the indictment.

. Harris v. State, 99 So.3d 198, 205-06 (Miss.Ct.App.2011).

. Miss.Code Ann. § 97-37-37(2) (Supp.2012).

. Miss.Code Ann. § 97-3-7(2) (Rev.2006).

. Sneed v. State, 722 So.2d 1255, 1257 (Miss.1998).

. Flora v. State, 925 So.2d 797, 811 (Miss.2006).

. Abbott v. United States, - U.S. -, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010).

. Id. at 23.

.Id.

. Id.

. Id.

. Id.

. Id. at 23.

. Id. at 23-24.

. Id. at 24.

. 18 U.S.C. § 924(c)(l)(A)(i) (Supp.2009) (emphasis added).

. Abbott, 131 S.Ct. at 23.

. Id. (emphasis added).

. Id. at 30.

. Id. at 29.

. City of Natchez v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992).

. Id. (citing Pinkton v. State, 481 So.2d 306 (Miss.1985)).

. Miss.Code Ann. § 97-37-37(2) (Rev.2006).

. Id.

. Id.

. 18 U.S.C. § 924(c)(1)(A) (Supp.2009).

. 18 U.S.C. § 924(c)(l)(A)(iii) (Supp.2009).

. Miss.Code Ann. § 97-37-37(2) (Rev.2006).

. See McCaffrey's Food Market, Inc. v. Miss. Milk Comm’n, 227 So.2d 459, 463 (Miss.1969).

. Miss.Code Ann. § 97-37-37(2) (Rev.2006) (emphasis added).

. Miss.Code Ann. 99-19-81 (Rev.2007).