# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01758-COA

DILLARD HARVEY A/K/A DILLARD C. HARVEY A/K/A DILLARD CHANNING HARVEY A/K/A HARVEY DILLARD A/K/A MITCHELL BEARD A/K/A MICHAEL TOWNS A/K/A MICHAEL ANTHONY TOWNES

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/2013 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MANSLAUGHTER, AND SENTENCED AS A HABITUAL OFFENDER TO TWENTY YEARS, WITH AN ADDITIONAL TEN YEARS AS A SENTENCE ENHANCEMENT FOR THE DISPLAY AND USE OF A FIREARM BY A CONVICTED FELON DURING THE COMMISSION OF A FELONY, AND COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCED TO TEN YEARS, WITH ALL SENTENCES TO RUN CONSECUTIVELY, WITHOUT THE POSSIBILITY OF PROBATION, PAROLE, REDUCTION, OR SUSPENSION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |

DISPOSITION:                      AFFIRMED IN PART; REVERSED AND
                                  RENDERED IN PART: 10/13/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE, CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Dillard Harvey broke up two auto burglaries in one day.  He might have been regaled

as a hero had he not shot the second burglar in the back as he retreated, begging for his life.

Harvey was tried for murder and convicted of manslaughter as well as being a felon in

possession of a firearm.  We affirm those convictions and sentences, but we reverse and

render an additional firearm enhancement since Harvey was sentenced as a habitual offender

for the underlying crime.

**FACTS**

¶2.     Harvey was on his second date with Felita Brown.  As the evening was winding down

and Harvey was taking Brown back to her vehicle, he spotted some young men breaking into

his son's car.  Harvey apprehended one, and Brown accompanied him to the police station.

Harvey then took Brown back to her home, and, it being quite late by that point, went to sleep

on Brown's couch.  Early that morning, he awoke to the sounds of Aaron Yates, a former

boyfriend of Brown's, beating on her door and breaking into her car.

¶3.     According to Brown, Harvey told her to call the police.  He then armed himself with

a revolver he had been carrying and went to the door.  He and Yates began fighting over the

gun on the porch, with Harvey eventually getting the upper hand.  Harvey, in control of the

2

gun, was "stomping" on Yates while Yates was kicking up at him when Brown went back inside. She did not see what happened next, but the last thing she heard Yates say was:

> *Man, I promise to God if you let me go I'll never come back around here again.*

The pleas were followed by a gunshot. Harvey came back inside and said he had shot Yates accidentally. When Brown went outside she saw Yates lying in the driveway, face up.

¶4. A neighbor testified that she heard Yates screaming that he was going to leave and begging Harvey to stop. She saw Harvey – who was much larger and stronger – beating Yates about the head with a gun and dragging him around on the porch. Yates was trying to get away, but Harvey would not let him. Yates did eventually get loose, and he retreated, with his hands up, begging for his life. Harvey shot Yates and then turned to the neighbor and asked, "What have I done?" Harvey went back into the house, and Yates repeatedly cried for help before succumbing to his wounds.

¶5. Harvey testified in his own defense. He claimed that the gun belonged to Yates and that Yates was threatening him with it and demanding to know who he was, apparently out of romantic jealousy. According to Harvey, he was the one offering to leave and asking not to be shot, and the gun went off accidentally while he wrestled with Yates in self-defense.

**DISCUSSION**

**1. Firearm Sentence Enhancement**

¶6. Because Harvey was sentenced for manslaughter as a habitual offender, Mississippi Code Annotated section 99-19-81 (Supp. 2014) required that he receive the maximum

3

sentence, twenty years. The trial court also sentenced Harvey to an additional ten years under the enhancement for the display or use of a firearm while committing the felony, under section 97-37-37(2) (Rev. 2014). However, that section provides that it is applicable only "except to the extent that a greater minimum sentence is otherwise provided by any other provision of law." *Id.*

¶7. In *Harris v. State*, 99 So. 3d 169, 174 (¶26) (Miss. 2012), the Mississippi Supreme Court held that the mandatory maximum penalty provided by the habitual offender statute is "a greater minimum sentence . . . otherwise provided by any other provision of law."

¶8. In today's case, the State concedes that *Harris* is controlling and that under *Harris* Harvey was erroneously sentenced to the firearm enhancement. It argues that this Court should reconsider *Harris*, but we are not in a position to overrule a recent, unanimous decision of the Mississippi Supreme Court.

¶9. We reverse and render Harvey's ten-year sentence under the firearm enhancement.

### 2. Testimony of Forensic Pathologist

¶10. Dr. Adel Shaker, a forensic pathologist, testified about Yates's injuries. Yates had numerous contusions, abrasions, and lacerations, including a significant laceration to the head consistent with being struck by a gun barrel. He died from a gunshot wound to the back, with the absence of gunshot residue and burns indicating that the bullet was fired from more than two and one-half feet away. Dr. Shaker described the trajectory of the bullet as traveling through Yates's body "from back to front, from down upwards, from the bottom

to the top[,] and from the right to the left." Photographs of the body were introduced into evidence showing the entry and exit positions of the bullet. Over repeated defense objections alleging that the testimony was speculative, Shaker was also asked as to the body position of the victim when he was shot. Shaker testified:

> Q.     Do you have any expert opinion as to the body position Mr. Yates was in when the bullet penetrated his body?
>
> BY [THE DEFENSE ATTORNEY]: Objection, Your Honor.
>
> BY THE COURT: Overruled.
>
> A.     Basically, the shooter was behind him. And while he was shot, he was just ducking and kneeling down forward because during this position, this is the only explanation. The gunshot wound enter here and exit there (indicating). And the shooter was behind him. There is no alternative explanation and I imagine that you can imagine what has been happening at that time. The shooter is in the back.[1]

¶11.    First of all, we note that the objection at trial was to the question, while the objection on appeal is to the answer that was given, which went beyond the question to encompass not only the position of the victim's body, but its position relative to its surroundings and relative to the shooter. "An objection to a proper question does not reach an answer that is not responsive or is otherwise objectionable . . . ." 88 C.J.S. *Trial* § 216 (2012). "[I]ssues not presented to the trial court for lack of contemporaneous objection are procedurally barred, and error, if any, is waived." *Goff v. State*, 14 So. 3d 625, 654-55 (¶118) (Miss. 2009)

---

[1] Dr. Shaker apparently stood up and leaned over to demonstrate, as was noted by the attorneys and the trial judge during a subsequent discussion.

(citation omitted).

¶12.    Otherwise, Harvey's argument is cursory.  Other than simply asserting that the testimony was speculative, Harvey relies exclusively on *Edmonds v. State*, 955 So. 2d 787 (Miss. 2007), which he argues stands for the proposition that a forensic pathologist can never testify as to the relative positions of the shooter and the victim.  But in that case, the pathologist testified that – for reasons he did not disclose – he believed it was more likely there had been two people holding the murder weapon rather than just one.  *Id.* at 791-92 (¶7).  The supreme court cited this Court with approval when we had observed that "you cannot look at a bullet wound and tell whether it was made by a bullet fired by one person pulling the trigger or by two persons pulling the trigger simultaneously," and it faulted the pathologist in that case for apparently testifying otherwise.  *Id.* at 792 (¶7).  The court did not hold that a pathologist can never testify to the relative positions of the victim and shooter, and Harvey offers no real argument or analysis of that question.  Notwithstanding the procedural bar we find no merit to this issue.

### 3.  Denial of Recross

¶13.    Dr. Shaker's testimony that we addressed above was offered on redirect.  During direct examination, the trial judge had sustained objections to similar questions based on a failure of the prosecution to create a foundation.  After the redirect, Harvey asked for a recross to examine the issue of the victim's position, but the trial court denied it after noting that – although he may not have gone into the same detail – Dr. Shaker had made the same

6

demonstration during direct examination.

¶14.    On appeal, Harvey argues that the question about the victim's body position was beyond the scope of the cross-examination and that the trial court therefore abused its discretion in denying the recross. We review the trial court's denial of recross-examination for an abuse of discretion. *Hubbard v. State*, 437 So. 2d 430, 434 (Miss. 1983).

¶15.    It is difficult to analyze this issue since the trial court based its decision on gestures or demonstrations Dr. Shaker had made during direct and cross-examinations, which were not made part of the record on appeal. But we are of the opinion that, if the question or answer were beyond the scope of cross-examination, as Harvey contends, he had a duty to contemporaneously object on that basis. Harvey objected to the question on the (unspecified contemporaneously, though previously argued) grounds that its answer would be speculative, but he did not object to the answer. The failure to object or the "[o]bjection on one ground at trial waives all other grounds for objection on appeal." *Rubenstein v. State*, 941 So. 2d 735, 758 (¶75) (Miss. 2006).

¶16.    Having failed to contemporaneously object to the question as beyond the scope of cross-examination, Harvey cannot argue the trial court abused its discretion in denying recross.

### 4.  Instructions S-6 and D-14

¶17.    Harvey claimed he only possessed the gun for a few moments after he took it from Yates. At trial, Harvey offered an instruction, D-14, which would have instructed the jury

7

that self-defense was a defense to the charge of felon in possession of a firearm, while the State offered S-6, which stated that it was not. The trial court refused D-14 and gave S-6.

¶18. On appeal, Harvey concedes that self-defense is not a viable defense to possession of a firearm by a convicted felon. *Williams v. State*, 953 So. 2d 260, 263 (¶8) (Miss. Ct. App. 2006). But he asserts that necessity is a defense and that the trial court's giving an instruction on self-defense was misleading.

¶19. Harvey did not make this argument in the trial court, and he did not, in fact, even request a necessity instruction. He cannot complain that S-6, which accurately stated the law, was misleading to a defense he did not even ask be submitted to the jury. It is well-settled law that "error cannot be predicated on failure of the court to give an instruction that was not requested." *Blocker v. State*, 809 So. 2d 640, 646 (¶23) (Miss. 2002). We find no merit to this issue.

### 5. Demonstration

¶20. Finally, Harvey contends that the trial court abused its discretion in requiring defense counsel to repeat a demonstration with Harvey (defense counsel played Yates) that had been made during direct examination when he testified in his own defense. Harvey subsequently made a motion for a mistrial, which was denied, where he argued that this undermined defense counsel's credibility before the jury and made it appear as if defense counsel was a witness for the prosecution. The trial judge observed that the demonstration had been brief and inoffensive.

8

¶21. As the State points out, Harvey's defense counsel chose to participate in the demonstration, and Harvey presents no real authority supporting his arguments on this point. We find no merit to this issue.

¶22. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT I, MANSLAUGHTER, AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS AND COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY, WITHOUT THE POSSIBILITY OF PROBATION, PAROLE, REDUCTION, OR SUSPENSION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. THE TEN-YEAR SENTENCE ENHANCEMENT FOR THE DISPLAY AND USE OF A FIREARM BY A CONVICTED FELON DURING THE COMMISSION OF A FELONY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, JAMES AND WILSON, JJ., CONCUR.**